IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

PHYLLIS MARIE TATE, :
:
    Plaintiff, :
:
v. : CASE NO.: 1:17-cv-00184 (WLS)
:
CHURCH HILL TRUCKING, INC., :
et al., :
:
    Defendants. :
_____ :

## **JURY INSTRUCTIONS**

Members of the Jury:

    I will now explain to you the rules of law that you must follow and apply in deciding this case. When I have finished, the parties' lawyers will give their closing arguments. Then, you will go to the jury room and begin your discussions, or what we call your deliberations. I will also provide you with a written copy of these instructions. Therefore, you may, but need not, take notes during my instructions. It is important instead that you listen closely to the instructions as I go through them with you.

    In deciding the case, you must follow and apply all of the law as I explain it to you, whether you agree with that law or not—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law. Your decision must be based only on the evidence presented here, and you must not let your decision be influenced in any way by sympathy, or prejudice, for or against either party.

    The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

1

The Plaintiff in this case is Phyllis Marie Tate. The Defendants are Church Hill Trucking, Inc., Sammie Lee Vanover, III, and Monroe Guarantee Insurance Company. In these instructions, I may sometimes refer to Ms. Tate as "Plaintiff" and to the other Parties as "Defendants."

In your deliberations, you should consider only the evidence—that is, the testimony of the witnesses and the exhibits I have admitted into the record—but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions that reason and common sense lead you to make.

You should not consider evidence that has not been admitted into the record, and you should not consider a party's insurance coverage, if any, in reaching your conclusions in this case except as you may be instructed by the Court and only for such purpose. Questions and objections made by lawyers aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. If I sustained an objection to a question, you must ignore the question and not guess what the answer might have been. I also allowed some evidence for only a limited purpose. When I instructed you that I admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

"Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, an ultimate conclusion. The law makes no distinction between the weight you may give to either direct or circumstantial evidence. So you shouldn't be concerned about whether the evidence is direct or circumstantial.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. You should not assume from anything I may have said or done that I have any opinion concerning any of the issues in this case, one way or the other. It is your own recollection and interpretation of the evidence that controls.

In this case you have been permitted to take notes during the course of the trial, and most of you—perhaps all of you—have taken advantage of that opportunity and have made notes from time to time. You will have your notes with you and available to you during your

deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence, and neither should you be unduly influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony has been. Your own recollection and interpretation of the evidence is what matters.

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular fact in dispute is not controlling. You may decide that the testimony of a smaller number of witnesses concerning any fact in dispute is more believable than the testimony of a larger number of witnesses to the contrary.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the person impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a mistake or misstatement, you should decide whether that misstatement was simply an innocent lapse of memory or an intentional falsehood, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves. Also, the testimony of a party who offers him or herself as a witness in his or her own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal.

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters. Such witnesses are called "expert witnesses." However, merely because such a witness has expressed an opinion, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

If the proof fails to establish any essential part of a claim, defense, or contention by a preponderance of the evidence, you should find against the party making that claim, defense, or contention. If the evidence on each side is equally balanced with respect to a claim, defense, or contention, that is, where the jury equally believes the witnesses on each side as on the other, then the preponderance of the evidence would not have been carried by the party bearing the burden of proof on that issue. In that situation, you should find for the party who does not have the burden of proof on that matter.

In this case, it is the responsibility of the Plaintiff, Ms. Tate, to prove every essential part of her claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Ms. Tate's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If a party has evidence in that party's power or reach by which it may deny a claim or charge against it but does not produce it, or if that party has more certain and satisfactory evidence in its power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.

If a party fails to produce an available witness, the jury shall determine whether such a failure warrants the inference that the witness, if produced, would have testified to facts prejudicial to the party failing to produce the witness.

I will now explain to you the nature of this case and the parties' claims, defenses, and contentions.

This is a negligence case. Ordinary negligence means the absence of or the failure to use that degree of care that is used by ordinarily careful persons under the same or similar circumstances.

Negligence may consist in either doing something that a reasonably careful person would not do under like or similar circumstances or in failing to do something that a reasonably careful person would do in like or similar circumstances.

For a plaintiff to prevail in a negligence case, she must prove, by a preponderance of the evidence, that the negligence, if any, of the defendants was a proximate cause of the injuries to the plaintiff. To recover, a plaintiff must prove that the defendant was negligent in one or more ways alleged. It is not necessary for the plaintiff to prove that the defendant was negligent in every way that the plaintiff claims. If you find no negligence at all on the part of Mr. Vanover, then the Plaintiff's case against the Defendants ends. Also, before a plaintiff can recover monetary damages from a defendant in a negligence case, there must be injury to the plaintiff resulting from the defendant's negligence.

Negligence cannot be inferred from the mere happening of a vehicular collision. The mere fact that an incident happened and that a plaintiff may have sustained injuries or damages affords no basis for recovery against a particular defendant unless the plaintiff carries the burden of proof and shows that such incident and damages were caused by negligence on the part of that defendant in a manner alleged by the plaintiff.

5

Now, at this time, I want to make sure you understand that the defendants do not have to disprove the plaintiff's claims. In other words, the Defendants do not have to prove that Mr. Vanover, the defendant driver, was not negligent. So if the Plaintiff does not prove that Mr. Vanover was negligent *and* that his negligence caused injury or damage to the Plaintiff, you must find in favor of the Defendants.

In evaluating a driver's negligence, you may use your own experience and reasoning to determine whether the driver exercised the degree of care that an ordinarily careful or prudent person would have used under circumstances similar to those that existed at the time of the collision in this case.

As you evaluate the negligence of the drivers, you should consider that a driver of a vehicle has a duty to keep a proper lookout of the road ahead and has no right to assume that the road ahead of him or her is clear of traffic. Also, no person shall drive a vehicle at a speed greater than is reasonable and careful under the conditions and having regard for the actual and potential hazards, if any, then existing.

In determining whether a driver was negligent, you may also consider whether the driver violated laws or regulations and whether that violation contributed to the accident. If a driver violated a law and this violation contributed to the wreck, then this would constitute what is known in the law as "negligence per se." It's up to you to decide whether such violation or violations occurred. I instruct you that a party does not have to establish that the other driver was negligent per se in order to prove the other driver was negligent. In other words, if you find that a driver failed to exercise that degree of care that an ordinarily careful person would have exercised under the circumstances, that would be sufficient to find the driver was negligent regardless of whether you find the driver was negligent per se by violating a law.

I will now instruct you, ladies and gentlemen, on the traffic and motor carrier laws that you may consider in this case.

1. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

2. The driver of a vehicle about to enter or cross a roadway from any place other than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or crossed.
3. A driver shall exercise due care in operating a motor vehicle on the highways of this state and shall not engage in any actions which shall distract such driver from the safe operation of such vehicle.
4. Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving.
5. The driver of a vehicle intending to turn left at an intersection shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the turning vehicle. Whenever practicable, the left turn shall be made to the left of the center of the intersection and so as to exit the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as the turning vehicle on the roadway being entered.
    a. The term "extreme left-hand lane" means the lane furthest to the left that is lawfully available to traffic moving in the same direction as the turning vehicle. In the event of multiple lanes, the second extreme left-hand lane shall be the lane to the right of the extreme left-hand lane that is lawfully available to traffic moving in the same direction as the turning vehicle.
    b. "Intersection" means the area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.
6. A "carrier" is a person who undertakes the transporting of goods or passengers for compensation.
7. No motor carrier shall schedule a run nor permit nor require the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than

those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated.

8. No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him or her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.

9. No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, unless the driver complies with the following requirements:
    a. *Start of work shift.* A driver may not drive without first taking 10 consecutive hours off duty;
    b. *14-hour period.* A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty.
    c. *Driving time and rest breaks*—(i) *Driving time.* A driver may drive a total of 11 hours during the 14-hour period specified in the preceding paragraph.

In this case, the Plaintiff, Ms. Tate, claims that the Defendants were negligent and that such negligence was a legal cause of damages sustained by Ms. Tate. Specifically, Ms. Tate alleges that between 6:00 a.m. and 7:00 a.m. on October 6, 2015, she was driving her tractor-trailer when a tractor being driven by Defendant Vanover pulled in front of her. Ms. Tate alleges that she attempted to swerve to avoid hitting Mr. Vanover's tractor, but that she was unable to avoid hitting him, and the two vehicles collided. Ms. Tate's tractor-trailer caught fire

8

and was destroyed. Ms. Tate alleges that she sustained physical injuries and incurred medical bills as a result of the collision.

The Defendants contend that Mr. Vanover was not negligent in operating his tractor and that Ms. Tate was negligent. They contend that Ms. Tate's negligence caused the collision at issue.

The Plaintiff in this case makes claims against Defendant Vanover, his employer Church Hill Trucking, Inc., and also brings a direct action against Monroe Guaranty Insurance Company, which is Defendant Church Hill Trucking, Inc.'s insurer.

Such direct action is authorized and permitted under the laws of the State of Georgia. In that regard, the sole issue for you is whether there is evidence that liability coverage existed with respect to the incident which is the subject of the Plaintiff's claims. You should consider the matter of insurance or liability coverage for no other purposes.

Here, the Parties have stipulated that liability coverage exists for the incident at issue in this case, so you may consider and accept that as a fact and need no further proof on the existence of liability coverage.

To prevail in this case, Ms. Tate must prove all of the essential elements of her claim by a preponderance of the evidence. So she must prove by a preponderance of the evidence that:

1. Mr. Vanover, the defendant driver, was negligent; and
2. Mr. Vanover's negligence was the proximate cause of injuries and losses claimed by the Plaintiff.

You just heard me use the term "proximate cause." Proximate cause means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or *some similar event*, might reasonably result therefrom. There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the sole proximate cause of an occurrence, then no act or omission of any party could have been a proximate cause.

9

When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced Ms. Tate's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury. However, the law does not permit you to speculate or guess as to the cause of any alleged injury and damage.

In this case, the Defendants claim and contend that Ms. Tate was negligent, that is, that she failed to exercise ordinary care. I charge you that every person has a duty to use ordinary care for his or her own safety. If you believe that the Defendants have proven by a preponderance of the evidence that Ms. Tate failed to use ordinary care and that this failure was the sole proximate cause of her injuries, then Ms. Tate cannot recover from the Defendants.

If the plaintiff, by the exercise of ordinary care, could have avoided the consequences caused by the defendant's negligence, then the plaintiff is not entitled to recover. In other cases, the defendant is not relieved of liability even though the plaintiff may have contributed to the injury sustained. The plaintiff's duty to exercise ordinary care to avoid the consequences of the defendant's negligence does not arise until the defendant's negligence exists and the plaintiff knew or, in the exercise of ordinary care, should have known of such negligence.

I will now explain what "damages" are. Damages are given as pay or compensation for injury done. When one party is required to pay damages to another, the law seeks to ensure that the damages awarded are fair to both parties.

If you believe from a preponderance of the evidence that Ms. Tate is entitled to recovery, you must find for her and should award to her such sums as you believe are reasonable and just in this case. In all cases, necessary expenses resulting from the injury are a legitimate item of damages.

As to medical expenses, such as hospital, doctor, and medicine bills, the amount of the damage would be the reasonable value of such expenses as was reasonably necessary.

Loss of earnings from the time of the alleged injury to the time of trial is a legal item of damages, and the amount that may be recovered is the value of the earnings that the evidence shows with reasonable certainty the plaintiff has lost as a result of the injury. You may consider what the plaintiff was making at the time of the injury, what was made since the

injury, the amount customarily paid in the locality for the kind of work the plaintiff does, and similar matters. There must be some evidence before you as to the plaintiff's loss.

If you find that the plaintiff's earnings will be permanently reduced or destroyed, lost future earnings--just like lost past earnings--are to be determined on the basis of the earnings that the plaintiff will lose, and there must be some evidence before you as to the amount of such earnings.

In considering the evidence, you should take into consideration that old age generally reduces the capacity to labor and earn money.

You may also take into consideration the proposition that the ability of the plaintiff to earn money could have increased during some later periods of the plaintiff's life, if it is authorized by the evidence.

After you have determined the loss of future earnings, you may reduce the plaintiff's gross loss of future earnings to its present cash value. You would do so by using a rate of interest of 5 percent per annum as a reduction factor.

"Pain and suffering" is a legal item of damages. In awarding damages for pain and suffering, your standard should be your enlightened conscience as fair and impartial jurors. Questions of whether, how much, and how long Ms. Tate has suffered or will suffer are for you to decide. "Pain and suffering" includes mental suffering, but mental suffering is not a legal item of damage unless there is physical suffering also. As part of pain and suffering, you may also consider whether Ms. Tate's injuries cause her a diminished capacity to labor.

In evaluating Ms. Tate's pain and suffering, you may consider the following factors, if proven: interference with normal living; interference with enjoyment of life; loss of capacity to labor and earn money; impairment of bodily health and vigor; fear of extent of injury; shock of impact; actual pain and suffering, past and future; mental anguish, past and future; and the extent to which Ms. Tate must limit activities.

If you find that Ms. Tate's pain and suffering will continue into the future, you should award damages for such future pain and suffering as you believe she will endure. In making such award, your standard should be your enlightened conscience as impartial jurors. You would be entitled to take into consideration the fact that Ms. Tate is receiving a present cash award of damages not yet suffered.

Ms. Tate also seeks to recover for alleged damages to her personal property, such as her jewelry. If you find that the plaintiff is entitled to recover, her jewelry and other property are proper items of damages. The amount that may be recovered is the difference between the fair market value of the property immediately before the injury and the fair market value of the property after the damage, if any, was inflicted. However, you should *not* consider the value of Ms. Tate's tractor-trailer, which was burned in the collision, in determining the monetary damages to be awarded.

You may determine the life expectancy of a person when the person's age is shown without any other direct evidence on the subject. In deciding this matter, you are also entitled to consider the evidence pertaining to the plaintiff's health, habits, surroundings, and method of living. By taking into consideration the factors as to earning capacity and life expectancy and applying them to this plaintiff's life, you should determine what the average annual loss of future earnings probably would have been.

There is another way in which you may determine the life expectancy of Ms. Tate. There has been introduced into evidence a copy of the 1949 mortality tables. If you desire to determine from this table the life expectancy of a person, look up that person's age in one column, and across from the age column, you will find the life expectancy of a person of that age. Life expectancy shown on any such table is merely a guide that you may follow while considering the evidence as a whole.

In this case, the Defendants assert the affirmative defenses of comparative negligence, equal negligence, and avoidance of the consequences. Even if the Plaintiff proves her claims by a preponderance of the evidence, the Defendants may still prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately. I caution you that while the Defendants' do not have to disprove the Plaintiff's claims, if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

If you find by a preponderance of the evidence that Ms. Tate was also negligent, you will apportion percentages of fault for the collision between the Plaintiff and Defendants.

If you believe that the Plaintiff is entitled to recover and further find that the Plaintiff is to some degree responsible for the injury or damages claimed, you should not make any reduction because of the negligence, if any, of the Plaintiff. The Court will enter a judgment based on your verdict and, if you find that the plaintiff was negligent in any degree, the Court in entering judgment will reduce the total amount of damages by the percentage of negligence which you attribute to the Plaintiff.

If you find that the Plaintiff's negligence was equal to or greater than that of Mr. Vanover, Ms. Tate cannot recover any monetary damages. This means that the Plaintiff is not entitled to recover any damages if you find that she is 50 percent or more responsible for the injury or damages claimed.

If you find that the Ms. Tate and Mr. Vanover were negligent, but that Ms. Tate was less negligent than Mr. Vanover, then there could be a recovery for the Plaintiff but the amount she receives, if any, would be reduced by the Court proportionate to the amount of fault that you attribute to the Plaintiff.

Some negligence cases involve pre-existing conditions. I instruct you that Ms. Tate may not recover for injuries or disabilities that are not connected with the acts or omissions of Mr. Vanover in this case. There can be no recovery for Ms. Tate for any injury or disability that was not proximately caused by the collision in this case.

However, if you should find that, at the time of the incident, the Plaintiff had any physical condition, ailment, or disease that was becoming apparent or was dormant, and if you also find that the Plaintiff received an injury as a result of the negligence of Mr. Vanover and that this injury resulted in any aggravation of a condition already pending, then the Plaintiff could recover monetary damages for aggravation of the pre-existing condition.

Remember, you should not consider the question of damages until you have first determined whether or not the Defendants are liable for damages claimed by Ms. Tate. If you find upon the evidence and under the Court's instructions that the Defendants are not liable to Ms. Tate, then you have no occasion at all to consider the question of damages.

Of course, the fact that I have given you these instructions concerning the issues of damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case or receive damages. That is for you to decide.

13

You are also instructed that the Plaintiff or her lawyer failed to timely disclose certain evidence to the Defendants. Only recently, in March of this year, did the Plaintiff disclose that she had hip surgery in June 2019, that she had additional medical bills and records that are relevant to this case, and that she applied for Social Security disability benefits and listed the date of her disability as April 5, 2019. Also in March of this year, the Defendants learned for the first time from records possessed by or known to the Plaintiff that the Plaintiff was in a subsequent truck accident on April 5, 2019—the same date that she listed as her disability in her application for Social Security disability benefits. As the finder of fact, you may determine the impact, if any, that the timing of the disclosure of this evidence has had on this case or the Defendant's ability to effectively defend against the Plaintiff's claims.

I caution you, however, that in considering and determining the Plaintiff's damages, if any, you may not consider any disability payments the Plaintiff has received, is receiving, or might receive as a credit or offset of any amount of damages you find the Defendants are liable for as payment to the Plaintiff.

Now, any verdict that you reach must be a unanimous verdict. In other words, to return a verdict, you must all agree as to what that verdict is. Your deliberations are secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because others think differently or merely to get the case over with.

Remember that, in a very real way, you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. A majority of you is sufficient to select a foreperson.

A verdict form has been prepared for your convenience. Be careful to follow all directions set out on the verdict form and enter your findings accordingly. When you have

agreed on the verdict, your foreperson must fill in the form, sign it and date it. There is also a place for each of the remaining jurors to sign indicating your concurrence with the verdict as entered by the foreperson. You will then return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question, if you have one, and give it to the court security officer. The court security officer will bring it to me, and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers first and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

As I said earlier, the Court will provide you with a written copy of my instructions. I remind you that, at any time there is a question as to the meaning of any instruction, the question should be directed in writing to me. Thereafter, I will give you additional instructions, if necessary or requested. In other words, you should rely only on the Court to explain these instructions.

GIVEN IN OPEN COURT, this 21st day of June 2021.

                                                                                        _____
                                                                                        **W. LOUIS SANDS, SR. JUDGE**
                                                                                       **UNITED STATES DISTRICT COURT**